**FIDELITY & CASUALTY CO. OF NEW YORK v. GLENN et al.**

(Circuit Court of Appeals, Fourth Circuit. January 24, 1925.)

No. 2283.

**1. Appeal and error ⟫969—Refusal to transfer case to equity side not disturbed on appeal, unless clearly erroneous.**

Trial court's refusal to transfer case to equity side of court, and its hearing thereon on

3 F.(2d)—58

law side before a jury, largely involves matters of procedure, and should not be disturbed on appeal, unless clearly erroneous.

**2. Courts ⟫352—Statutes and court rules relating to transfer of cases held remedial, and to be liberally construed.**

Judicial Code, § 267 (Comp. St. § 1244), section 274b as amended by Act March 3, 1915 (Comp. St. § 1251b) and new Equity Rules Nos. 18, 22, 23, relating to transfer of cases to equity side of court, are remedial, and should be liberally construed to obtain speedy trial and conclusion of issues involved.

**3. Jury ⟫13(7)—Defense of fraud to action on penal bond held usually to entitle parties to jury trial.**

Where defense of fraud is set up in action on bond given to secure performance of contract, parties are usually entitled to jury trial.

**4. Appeal and error ⟫1035—Case improperly tried at law not sent back for transfer to equity side except to prevent miscarriage of justice.**

Where only effect of holding that case tried at law should have been disposed of in equity would be to send it back to be transferred to equity side and heard over by same judge, on probably the same testimony, Circuit Court of Appeals will not do so, unless circumstances of case so require to prevent manifest miscarriage of justice.

**5. Principal and surety ⟫160—Testimony relating to advances on contract and as to loss of profits from breach held admissible against surety on penal bond.**

In action on penal bond securing performance of contract, plaintiff's testimony as to amount of advances not repaid, and as to profits he would have made had undelivered ties been of best quality, and profits if they had been of average quality, *held* properly admitted.

**6. Evidence ⟫167 — Testimony relating to substance of statements, based on witness' independent recollection thereof, held properly admitted.**

In action against surety on penal bond securing performance of contract, testimony relating to substance of statements rendered by indemnitors of plaintiffs, based on witness' independent recollection thereof, was properly admitted, where statements were admissible.

**7. Appeal and error ⟫1002—Jury's verdict conclusive on conflicting evidence.**

Where there was sharp conflict as to facts, jury's verdict was conclusive.

**8. Appeal and error ⟫1058(1)—Exclusion of evidence subsequently admitted was not error.**

Exclusion of evidence which was subsequently admitted was not error.

**9. Principal and surety ⟫41—Not necessarily improper or fraud on surety for buyer to act as seller's agent in getting out cross-ties.**

Where performance of contract to deliver cross-ties was secured by penal bond, *held* that it was not necessarily improper or fraud on surety for buyer to act as corporate seller's agent in getting out ties.

**10. Principal and surety ⌐42—Instruction relating to buyer's right to recover from surety, notwithstanding concealment of facts, held not error.**

In action against surety on penal bond securing performance of contract to deliver crossties, it was not error to instruct that before buyer should be denied recovery for concealing facts from surety he must have owed duty to disclose facts, and that, unless such duty existed, and to defraud surety he did conceal facts, he could not be denied recovery.

**11. Principal and surety ⌐42—Instruction relating to buyer's right to recover from surety, notwithstanding concealment of facts, held not error.**

It was not error to instruct that, if surety on penal bond to secure performance of contract had opportunity by reasonable diligence, to ascertain existence of facts concealed from it by buyer, there was no fraud, unless buyer used some deceit or trick to throw surety off its guard, and thereby prevented an investigation.

**12. Trial ⌐260(1)—Instructions as to matters fully covered by instructions given held properly refused.**

Defendant's requested instructions as to matters fully covered by instructions given, and which were passed on adversely to defendant, were properly refused.

**13. Appeal and error ⌐1067—Modification of instruction offered, making more accurate statement of matter involved, not reversible error.**

Court's modification of instruction offered in action on bond securing performance of contract, relative to increase of risk, by concealment of facts, so that it more accurately stated matter to be considered, even if unnecessary, held not reversible error.

**14. Trial ⌐143—Refusal to direct verdict was proper, where evidence on material issues was sharply conflicting.**

Refusal to direct verdict was proper, where evidence on material issues was sharply conflicting.

**15. Appeal and error ⌐1170(1)—Appellate court's judgment based on entire record without regard to technical errors or defects.**

Under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), section 274b as amended by Act March 3, 1915 (Comp. St. § 1251b), appellate court, in reviewing civil case, must base its judgment on examination of entire record, without regard to technical errors, defects, or exceptions not affecting substantive rights of parties.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Charles A. Woods, Judge.

Action by E. V. Glenn and another against the Fidelity & Casualty Company of New York. Judgment for plaintiffs, and defendant brings error. Affirmed.

Harold A. Ritz, of Charleston, W. Va. (Brown, Jackson & Knight and George S. Couch, all of Charleston, W. Va., on the brief), for plaintiff in error.

W. Chapman Revercomb, of Charleston, W. Va. (Koontz, Hurlbutt & Revercomb, of Charleston, W. Va., on the brief), for defendants in error.

Before WADDILL and ROSE, Circuit Judges, and COCHRAN, District Judge.

WADDILL, Circuit Judge. The writ of error in this case brings for review by this court the judgment and rulings of the United States District Court for the Southern District of West Virginia, at Charleston, by which plaintiff in error and his codefendant, the Equitable Land & Lumber Co. (who did not appear) was, on the verdict of the jury on the 30th of April, 1924, adjudged to pay the defendant in error the sum of $20,000. The facts are substantially as follows: The Equitable Land & Lumber Company and E. V. Glenn entered into a certain contract in writing dated October 2, 1922, under the terms of which the Equitable Land & Lumber Company agreed to manufacture and deliver to Glenn, in accordance with specifications and at the prices enumerated therein, certain cross-ties from a tract of land situate in Wayne county, W. Va., owned by the company and known as the Wilson tract. The contract provided that the Equitable Land & Lumber Company should execute and deliver to Glenn its bond in the penalty of $25,000, with good and sufficient surety thereon, for the faithful performance of that part of said contract to be performed from the date of October 2, 1922, to June 1, 1923, to wit, the delivery on railroad cars at or near Wilsondale, Wayne county, W. Va., of at least 5,000 ties per month for a period of eight months within the dates named. Bond in the penalty of $25,000 with the plaintiff in error as surety thereon was executed and delivered. This bond was subsequently, by and with the assent of the plaintiff in error, assigned by Glenn to the Citizens' National Bank of Charleston, W. Va., as its interest might appear. Previous to the execution of the contract of October 2, 1922, Glenn had advanced the Equitable Land & Lumber Company $15,000, which that company paid to its vendors as part of the purchase price of the Wilson tract, and said contract provided that this $15,000 was to be repaid by the company to Glenn at the rate of $1,900 per

month—the payments to be made by crediting the amount of 38 cents per tie for each tie delivered, based on the delivery of 5,000 ties per month. During the whole life of the contract only 7,149 ties were delivered, leaving 32,851 to be furnished, and $2,716.-62 had been paid in cash on account of the money advanced, leaving a balance of $12,-283.38 unpaid on the $15,000.

The contract and bond in suit were second undertakings between the parties in relation to the ties on the tract of land in question, the latter contract taking the place of the former, under which no ties had been furnished, and the surety bond was increased from $15,000 to $25,000, the plaintiff in error taking the personal guaranty of S. H. Nigh, the president, and R. W. Griffith, the general manager of the Equitable Land & Lumber Company, they being the substantial owners of the company, as security.

This action of debt on the penal obligation for $25,000 was instituted by the defendant in error to recover the amount thus shown to be due on account of the money advanced, together with the damage sustained by the defendant in error for the failure to furnish undelivered ties.

Plaintiff in error appeared and filed two pleas; the first alleging fraud on the part of the defendant in error E. V. Glenn in the procurement and execution of the contract, and that Glenn and the Equitable Land & Lumber Company (plaintiff in error's codefendant) had concealed and withheld from plaintiff in error facts and circumstances in connection with the contract and obligation sued on within their knowledge, and not known to the plaintiff in error, sufficient to avoid the contract; and, the second, nondamnification. Plaintiff in error likewise filed its answer setting up the defense substantially as set forth in its plea No. 1, and moved the court to transfer the cause to the equity side of the court, and dispose of the issues presented as a chancellor without the aid of a jury. Defendants in error demurred to said pleas 1 and 2, and moved to strike out the same, as they also objected to the transfer of the case to the equity side of the court. The court overruled the demurrers and motion to strike out the pleas, and also the motion to transfer the case to the equity side; and thereupon special replications were filed to pleas 1 and 2, and issue was joined thereon; and under these pleadings, the plaintiff in error first asking for an instructed verdict in its favor, which was denied, the whole case upon the merits was submitted to the jury under appropriate instructions and charge from the court, with the result that the jury found the verdict complained of, on which the court entered judgment on April 30, 1924. It is from the action thus taken that this writ of error is sued out.

The assignments of error, 13 in number, fairly set forth the contested questions presented for the consideration of the court, and they will be considered in their appropriate order.

[1] Assignments Nos. 1 and 2 relate to the action of the court in refusing to transfer the case to the equity side and proceeding to hear the same on its law side before a jury. These rulings involve largely matters of procedure, in which the trial court was called upon to determine what should be done, and, unless there was some plain error in the action taken, the same should be adopted by and not disturbed by this court.

[2] Of course, in determining a question of whether the case should have been proceeded with at law or transferred to the equity side of the court, it is necessary to consider section 267 of the Judicial Code (Comp. St. § 1244) as well as the requirements of section 274b as amended by Act March 3, 1915 (Comp. St. § 1251b), and the new Equity Rules of the Supreme Court Nos. 18, 22, and 23. These statutes are remedial in character, and should be liberally construed, to the end, if possible, of a single, direct, and speedy trial and conclusion of the issues involved in the litigation.

[3, 4] Where, as here, the question of fraud is raised by the defendant's pleadings in a suit at law regularly instituted to enforce the collection of a bond, and consists of alleged misunderstandings and alleged fraudulent practices in connection with the procuration and execution of the bond, the parties are usually entitled, as they were accorded here, the benefit of a trial by jury (Knickerbocker Trust Co. v. Abbott, 247 F. 833, 837, 160 C. C. A. 55; Plews v. Burrage [D. C.] 274 F. 881, 884, 885), and, where the only effect of holding that a case tried at law should have been disposed of in equity would be to send the same back to be transferred to the equity side, and heard over again by the same judge, upon probably the same testimony, this court should be reluctant to adopt such course, and not do so unless the circumstances of the case made the same necessary to prevent a manifest miscarriage of justice (Camp v.

Gress, 250 U. S. 308, 39 S. Ct. 478, 63 L. Ed. 997; Liberty Oil Co. v. Condon Nat. Bank et al., 260 U. S. 236, 241, 242, 43 S. Ct. 118, 67 L. Ed. 232; United States v. Richardson [C. C. A.] 223 F. 1010, 139 C. C. A. 386; Manchester R. R. Co. v. Barrett [C. C. A.] 265 F. 557, 559; Plews v. Burrage, supra [D.·C.] 274 F. 881).

[5, 6] Assignment No. 3, paragraphs a, b, c, and d, relate especially to the testimony offered by the plaintiff, paragraphs a, b, and c bearing upon the testimony of the plaintiff E. V. Glenn; the witness' testimony, objected to in these three paragraphs, being as to his statement of the amount remaining unpaid on the $15,000 advanced by him, the profits he would have made had the undelivered ties been of the best quality, and what the same would have amounted to if only of average quality. All of this bore directly upon the proof required to be adduced by plaintiff in establishing his claim, and, unless he was to be denied the right to prove the same, there was manifestly no error in admitting his testimony. Paragraph "d" is directed to permitting a witness to testify in the absence of certain statements in writing which had been rendered to him by certain indemnitors of the plaintiffs as to the substance of those statements. Assuming that the documents in question would have been admissible if they had been themselves produced, we do not see that under the circumstances under which the question was raised`any error was committed in allowing the witness from his independent recollection to testify as to their substance.

[7-9] Assignment No. 4 relates to the rejection of certain evidence offered by the defendant in paragraphs a, b, and c; (a) to the effect that, had the witness plaintiff in error's representative known that the defendant in error Glenn was interested in the Equitable Land & Lumber Company, he would not have executed the bond in suit; (b) that, had he known Glenn was to become general manager of the company in getting out the ties, and to have an interest in said company, he would not have executed the bond; and (c) that in such circumstances the rules of his company would have forbidden the giving of the bond.

These objections relate, not to what the plaintiff in error did do, but what he claims he might have done under a different state of facts. Still, it is worthy of note that as to all three of them there was a sharp conflict in the testimony as to whether the plaintiff in error's agent was not fully advised and informed in advance of signing the surety bond as to the very matters in dispute; and in the light of the verdict of the jury we cannot accept its version as to the facts. In addition to this, the plaintiff in error's agent was afterwards permitted without objection to testify that, if he had been advised of the facts, he would not have signed the bond. The exclusion of evidence which is subsequently admitted is not error. Matheson v. U. S., 227 U. S. 540, 33 S. Ct. 355, 57 L. Ed. 631. Moreover, as we view the testimony, we are strongly impressed with the fact that plaintiff in error's agent did know of the conditions that he now denies knowledge of. Nor are we convinced that there was any impropriety in the defendant Glenn acting as agent for the company, under the direction of its president, in getting out ties, since he was the person most seriously to be affected by the failure to complete the contract, and had the greatest interest therein.

Assignments Nos. 5, 6, and 7 relate to instructions 1, 5, and 6 given by the court at the instance of the defendant in error. These three instructions relate to the precise questions covered by assignment No. 4 regarding the connection of the defendant Glenn with the Equitable Land & Lumber Company, whether the representative of the plaintiff in error had knowledge thereof, or whether there was concealment on the part of the defendants in error in keeping such knowledge from it, and the effect of the failure to disclose the information as to Glenn's relation to the plaintiff in error at the time of giving the bond. What we have said on this subject under that assignment applies strictly to this question; and we may further add that it by no means appears to us why, under the circumstances, Glenn, who had the greatest interest in the performance of the work expeditiously, and who had paid large sums on that account, should not with propriety have accepted employment with the company to carry out the contract under the supervision and direction of its president. But however that may be, under the finding of the jury we would not be warranted in adopting the plaintiff in error's view as to its lack of knowledge regarding the circumstances under which the bond was given, in the respects involved in this instruction.

[10, 11] In considering the sixth assignment, the court in instruction 5 was fully warranted in saying to the jury before the defendant Glenn should be held liable upon the theory of, concealment of facts that

there must have been a duty on him to disclose such facts, and, unless such duty did exist, and for the purpose of defrauding plaintiff in error he did conceal the facts, he could not be denied the right of recovery on that account; and under the seventh assignment, instruction No. 6, the court was also fully warranted in telling the jury that, if the plaintiff in error had the opportunity, by reasonable diligence, to ascertain the existence of the facts alleged to have been concealed from it by one of the defendants in error, then that there was no fraud, unless they used some deceit or trick to throw plaintiff in error off its guard, and thus prevented an investigation.

[12] Assignments 8, 9, and 10 relate to the action of the court in refusing to give instructions 1 and 2 offered by plaintiff in error, and in modifying No. 4 as offered.

Instruction No. 1 asked the court to instruct the jury to the effect that only ordinary risks were within the contemplation of the parties in the execution of the contract, so that special information should have been given of any extraordinary circumstances within the knowledge of the defendant in error Glenn, and, if withheld from the surety company, the same constituted a legal fraud on the surety company, and relieved it from liability.

This was but another effort to have the court tell the jury that there were unusual circumstances in connection with the contract, in that the defendant in error Glenn was employed by the company, under its president, to supervise the execution of the contract, and that this fact, claimed to be unknown to the plaintiff in error, was sufficient to annul the bond. The court's ruling, in the instructions given, hereinbefore recited, offered by the defendant in error, fully covered these views of the case, and submitted the facts bearing on the issue again sought to be raised by these instructions to the jury of the knowledge or opportunity of knowledge of the plaintiff in error respecting the facts, and the same was passed on adversely to the plaintiff in error, and these instructions should have been rejected.

Instruction No. 2, rejected, refers to the precise situation in No. 1, adding to Glenn's employment as general manager the fact of his alleged interest in the company, and the lack of knowledge of such fact by the plaintiff in error; and, for the reasons stated for rejecting the first, the second should likewise be excluded.

[13] Instruction No. 4 asks the court to instruct the jury that, if by acting as general manager under the president of the company, in getting out ties, the risk of the plaintiff in error was materially increased, and that the defendant in error Glenn allowed the surety company to join in the bond under a false impression as to the relationship existing between them, then that such concealment constituted fraud, and relieved the surety company from liability on the bond.

The instruction, as amended by the court, did not materially vary from the one offered, further than it more accurately stated the view sought to be covered by the instruction as to increasing the risk, viz., that the risk as to the concealment and suppression of facts should be such as materially increased the risk of the surety company. Certainly there was no reversible error in making this modification of the instruction as offered, even assuming that the same might have been unnecessary.

[14] Assignments 11 and 12. Assignment No. 11 relates to the action of the court in refusing to instruct the jury to render a verdict for the defendant; and assignment No. 12, to the failure of the court to in effect take from the jury the question of whether plaintiff in error had knowledge and opportunity of knowledge of such circumstances connected with the execution of the surety bond as would afford it notice of the relationship existing between Glenn and the Equitable Land & Lumber Company; the weight to be given to the circumstances under which the parties at the time acted; the reasonable inferences to be drawn therefrom; the sufficiency and effect of the communications that passed between them; and that the court pass upon the several questions of fact thus sought to be taken from the jury, and to declare a fraud was committed upon the surety company releasing it from the obligation of its contract. These two assignments will be considered together.

That the case should not have been taken from the jury is manifest, as on all the disputed questions of importance relating to the giving of the contracts, the carrying out of the same, the execution of the surety bond, the agreement had in connection therewith, and what was done between the several parties to the transactions involved, were the subject of sharp conflict in the testimony, and plainly should have been left to the jury. To have withdrawn it from them would have been an usurpation of authority on the part of the trial court

The suggestion in effect to have the court take away from the jury the weight to be given to what occurred between the parties, and the inferences to be drawn therefrom, would plainly have been error, aside from asking the court to take a view of the case upon the facts, in all of its essentials, not taken by the jury, and should not have been followed.

[15] Assignment No. 13 relates to the action of the court in refusing to set aside the verdict and grant a new trial, and in entering judgment for the defendant.

This assignment is clearly without merit. Upon the facts of the case as found by the jury, under the elaborate and comprehensive instructions and charge given by the court, the verdict of the jury should not be disturbed, and judgment should be entered thereon. This is a civil case in an appellate court, and under the statute should be disposed of and judgment given after an examination of the entire record before the court, without regard to technical errors or defects or exceptions which do not affect the substantive rights of the parties. Judicial Code, § 269, as amended by Act Feb. 26, 1919, 40 Stat. L. 1181 (Comp. St. Ann. Supp. 1919, § 1246), also Judicial Code, § 274b, as amended by Act March 3, 1915, 2 U. S. Comp. Stat. 1916, p. 2023, § 1251b, the concluding sentence of which amendment is as follows: "Whether such review be sought by writ of error or by appeal, the appellate court shall have full power to render such judgment upon the records as law and justice shall require." Camp v. Gress, supra, 250 U. S. 308, 39 S. Ct. 478, 63 L. Ed. 997; Liberty Oil Co. v. Condon Nat. Bank, supra, 260 U. S. 236, 43 S. Ct. 118, 67 L. Ed. 232.

The action of the district court under review is free from error, clearly right, and should be affirmed, with costs.

Affirmed.